Clerk's Office
Filed Date: 3/15/2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

      -against-

JALEESA WALLACE,

         Defendant.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
22-cr-153 (CBA)

**AMON, United States District Judge:**

Jaleesa Wallace moves for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and requests that I order home confinement in lieu of incarceration. (ECF Docket Entry ("D.E.") # 43 ("Mot.") 1.) Because Wallace has not begun serving her sentence of imprisonment and has not shown that both "extraordinary and compelling" reasons and the § 3553(a) factors warrant a sentence reduction, Wallace's motion is DENIED.

### BACKGROUND

On May 4, 2022, Wallace, a former United States Postal Service ("USPS") employee, pleaded guilty pursuant to a plea agreement to a single-count information charging her with postal theft in violation of 18 U.S.C. § 1708. (D.E. # 31 ("PSR") ¶¶ 1, 52.) Wallace's PSR and the plea agreement contemplated a Guidelines range of 30 to 37 months of imprisonment. (See id. ¶ 59; D.E. # 27 (Plea Tr.) 26:6-24.) At the outset of the sentencing hearing, I found that the applicable Guidelines range was 37 to 46 months, based upon the loss amount. (D.E. # 46 ("Sent. Tr.") 13:21-14:8.) Both parties agreed with this calculation, but the government "recommend[ed] that [the Court] impose a sentence within the range contemplated in the plea agreement, in fairness to the defendant." (Id. at 12:19-25, 14:9-10.)

1

The PSR and defense sentencing submissions emphasized Wallace's role as caregiver to her two minor children. For example, in an interview with the U.S. Probation Department for the PSR, Wallace's mother stated that if her daughter were incarcerated, "[i]t would be hard to care for the children, but she would have to do it." (PSR ¶ 40.) From a section of "factors that may warrant a sentence outside of the advisory guideline system," the PSR then noted that Wallace "is the mother to two minor children," "the primary caretaker of the[] two children," and that if she were incarcerated, Wallace's mother would need to care for the children, "a task complicated by [Wallace's mother's] necessary full-time, non-remote employment as an ophthalmologist authorization specialist." (Id. ¶ 73.) In requesting a non-incarceratory sentence of three years' probation and community service, the defense sentencing memorandum stated: "It is clear from the PSR that Ms. Wallace does not have anyone to care for her two children if she is sentenced to imprisonment." (D.E. # 33 at 2, 6.[1]) The government requested that I impose a sentence within the plea agreement's Guidelines range of 30 to 37 months. (Sent. Tr. 30:1-5.)

On January 4, 2023, after hearing argument from the parties, I sentenced Wallace principally to 30 months' imprisonment to be followed by three years of supervised release. (D.E. # 40.) At sentencing, I explicitly considered Wallace's family circumstances. Defense counsel argued that Wallace "has a young, extremely young child, which if she's incarcerated, certainly for a period of time, we're unsure as to where that child would stay." (Sent. Tr. 25:7-11.) I then noted that in the PSR, Wallace's mother explained that "if it came to that," she could take care of the child, and defense counsel responded: "It would be extremely difficult." (Id. at 25:12-25.) I further explained that my decision to downwardly depart from the 37 to 46-month Guidelines range was "principally in recognition of the hardship to the defendant's children" who were

---

[1] Because the sealed sentencing memorandum lacks internal pagination, I refer to the ECF page numbers.

2

"innocent victims that should merit some consideration in determining whether there is a basis to depart from the guidelines." (Id. at 33:1-9.) I set a voluntary surrender date of April 3, 2023. (Id. at 37:20-21.)

On February 13, 2023, Wallace filed a motion pursuant to 18 U.S.C. § 3582, requesting that I order Wallace to serve her 30-month sentence in home confinement. (Mot. 1.) The government opposes Wallace's request on the merits. (See D.E. # 44 ("Opp'n").) For the reasons set forth herein, Wallace's motion is denied.

## DISCUSSION

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). The First Step Act, one such exception, permits courts to reduce a term of imprisonment when "extraordinary and compelling reasons" are present. See 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Id. Based on this language, courts have found "four prerequisites" to granting a reduction of sentence under the First Step Act. See United States v. Levy, No. 16-cr-270 (ARR), 2020 WL 2393837, at *3 (E.D.N.Y. May 12, 2020). First, the defendant must have exhausted his administrative rights with the Bureau of Prisons ("BOP"). Id. Second, "extraordinary and compelling reasons" must warrant a reduction. Id. District courts may consider "the full slate of

3

extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (quoting 28 U.S.C. § 994(t)). Third, I must consider the factors set forth in 18 U.S.C. § 3553(a), and fourth, I must find that release is consistent with the Sentencing Commission's applicable policy statements. Levy, 2020 WL 2393837, at *3.

## I. Wallace's Application Is Premature

The First Step Act requires that before a court may grant compassionate release, the defendant must have either (1) "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) allowed thirty days to lapse from the time of the prison warden's receipt of the defendant's request to bring a motion on his behalf, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). Because Wallace is not yet in BOP custody, she is unable to exhaust her administrative remedies. (Mot. 4.) The government agrees that Wallace is unable to adhere to the exhaustion requirement and therefore does not argue that exhaustion bars Wallace's motion. (Opp'n 3 n.4.) The government waives exhaustion by failing to challenge Wallace's motion on that basis. See United States v. Saladino, 7 F.4th 120, 121 (2d Cir. 2021) (per curiam) (holding that "§ 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government").

Apart from the technical issue of exhaustion, however, I question whether the statute applies at all before a defendant commences service of her sentence. Given the importance of the issue, I address it sua sponte. "The Second Circuit has yet to speak on the issue of whether [§ 3582(c)(1)(A)] requires that a defendant be in BOP custody at the time of his compassionate

4

release motion." United States v. Javed, No. 16-cr-601 (VSB), 2021 WL 2181174, at *3 (S.D.N.Y. May 27, 2021); see also United States v. Johnson, No. 16-cr-457 (NGG), 2021 WL 466782, at *2 (E.D.N.Y. Feb. 9, 2021). But every court in this Circuit to address the issue has denied § 3582 motions as premature where the defendant had not yet begun serving her sentence, observing that "[b]y its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility." United States v. Jordan, 472 F. Supp. 3d 59, 62-63 (S.D.N.Y. 2020) (internal quotation marks omitted); United States v. Konny, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020) (finding defendant's § 3582 request to convert his term of imprisonment to home confinement improper before he had self-surrendered to BOP); Javed, 2021 WL 2181174, at *3-4 (same); see also United States v. Spruill, No. 18-cr-22 (VLB), 2020 WL 2113621, at *3 (D. Conn. May 4, 2020) (finding § 3582 motion to be premature where the defendant had not yet reported to BOP).

Other courts have found that a defendant did not need to be in BOP custody to bring a § 3582 motion, but in factually different circumstances. See United States v. Thrower, 495 F. Supp. 3d 132, 139-40 (E.D.N.Y. 2020); United States v. Austin, 468 F. Supp. 3d 641, 643-44 (S.D.N.Y. 2020) (noting the absence of an "express requirement" in § 3582(c)(1)(A) "that a defendant be in the custody of the [BOP] at the time he petitions for compassionate release"). In Thrower, for example, the defendant's sentence was vacated after he had served 149 months in prison; the Second Circuit then reversed that decision and remanded the case for reinstatement of the original sentence. 495 F. Supp. 3d at 134-35. In holding that the court could adjudicate Thrower's subsequent § 3582 motion before he re-entered BOP custody, the court acknowledged that Congress assumed that "the mine-run of defendants seeking sentence reductions under § 3582(c)(1)(A) would be in custody," and that "that assumption may support interpreting the

5

statute to exclude the defendants in Konny and Spruill, who awaited incarceration for the first time after being sentenced in the normal course[.]" Id. at 139. Noting that Congress likely did not consider the "peculiar facts" in Thrower, however, the court concluded that "Mr. Thrower, in his specific circumstances, may seek a sentence reduction under the statute." Id. at 139-40. Similarly, the Austin court limited its decision to "the narrow and exceptional situation presented," i.e., where the defendant served most of his sentence, was released after the district court vacated the remainder, then faced reincarceration after that decision was reversed. 468 F. Supp. 3d at 642-44.

By contrast, because Wallace has not yet begun serving her term of imprisonment, "a common scenario Congress likely considered," Thrower, 495 F. Supp. 3d at 139, I find her motion for sentence reduction premature. Accordingly, I find as an initial matter that the motion is not properly before me. Assuming I am found to be in error in my interpretation of the statute, I further conclude on the merits that Wallace has failed to show that extraordinary and compelling reasons warrant a reduction in her sentence.

## II.   Extraordinary and Compelling Reasons

Wallace seeks an order to serve her sentence in home confinement on the grounds that her family circumstances present a unique hardship. (Mot. 3.) Although Wallace concedes that many of the hardships faced by Wallace and her family were brought to my attention prior to and at sentencing, she contends that subsequent events warrant a modification of her sentence. (Id.) The principal new fact Wallace cites in her motion is that her twelve-year-old daughter recently expressed suicidal ideation and had to be examined by a doctor before she could return to school. (Id.) Wallace's motion also provides further detail regarding her children's educational issues—including that her younger son ends his school day at 2:00 p.m. and her mother is therefore unable to pick him up, (id.)—but Wallace's son's school hours were known to Wallace before sentencing

6

and could have been, but were not, raised at that time. Wallace also emphasizes that her daughter's father is in the process of moving to Florida, (id.), but the fact that her daughter's father resides in Florida was raised at sentencing. (See Sent. Tr. 21:8-25.)

The government opposes Wallace's motion on the grounds that the information concerning Wallace's family circumstances was before the Court at sentencing, and that in any event, issues regarding a defendant's children are common to parents facing incarceration and do not rise to the level of "extraordinary and compelling" reasons. (Opp'n 3-4.)

Wallace has failed to show "extraordinary and compelling" reasons warranting a sentence reduction. Although I am particularly sympathetic to the update regarding Wallace's twelve-year-old daughter, I do note that she was cleared to return to school. (See D.E. # 45 at 4 (Letter from Ridge Street School counselor).) In addition, before and during sentencing, defense counsel consistently raised issues concerning the circumstances of Wallace's two minor children, meaning that the hardships associated with the incarceration of the children's principal caretaker were known at the time. I also explicitly considered those hardships in downwardly departing from the 37 to 46-month Guidelines range, as Wallace's counsels concedes. (Mot. 3 ("To be sure, Ms. Wallace relied on her role as a single mother in connection with arguing for a non-guidelines sentence, and [w]e acknowledge that the Court undeniably considered that role in deciding on an appropriate sentence.").) Defense counsel also reiterated at sentencing that, while it would be extremely difficult, Wallace's mother could care for the children in Wallace's absence. (PSR ¶ 40; Sent. Tr. 25:12-25); see United States v. Mojica, No. 19-cr-629 (CS), 2020 WL 6746478, at *1 (S.D.N.Y. Nov. 16, 2020) (finding lack of "extraordinary and compelling" reasons to warrant sentence reduction despite acknowledging difficulty in defendant's fiancée needing to care for their autistic son on her own).

7

Moreover, district courts have consistently found that a wide variety of familial hardship, while unfortunate, does not rise to the level of "extraordinary and compelling." See United States v. Espinal, No. 10-cr-74, 2021 WL 3566579, at *2-3 (E.D.N.Y. Aug. 12, 2021) (Bianco, J.) (finding lack of "extraordinary and compelling" reasons to warrant sentence reduction where the defendant's mother's illnesses left her unable to care for herself); United States v. Figueroa, No. 15-cr-495 (ARR), 2021 WL 664004, at *3 (E.D.N.Y. Feb. 19, 2021) (collecting cases where the defendant's role as caregiver to family members did not constitute "extraordinary and compelling" reason for release); United States v. Vailes, No. 16-cr-297 (AMD), 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) ("There is no question that a defendant's incarceration is painful and burdensome to family members, who must bear the stress of managing their lives without the defendant's help. It is an unfortunate fact, however, that these burdens are common to almost all families of incarcerated people, and do not constitute extraordinary or compelling factors.").

### III. Section 3553(a) Sentencing Factors

Finally, the § 3553(a) sentencing factors further weigh against granting Wallace's motion for sentence reduction. I must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training,

    (E) medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) [the kinds of sentences and sentencing range provided for in the United States Sentencing Guidelines];

    (5) any pertinent [Sentencing Commission policy statement];

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    The 30-month term of imprisonment I imposed was—and remains—necessary to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense," as well as "to afford adequate deterrence to criminal conduct." Id. § 3553(a)(2)(A), (B). At sentencing, although I acknowledged that the instant offense was Wallace's first arrest and that she had two young children to care for, I emphasized that she had participated in "a monumental fraud" motivated by "greed." (Sent. Tr. 31:17-32:14.) Specifically, $10 million worth of money orders were taken from USPS, resulting in a loss of over $4 million. (Id. at 31:21-23.) The offense also did not appear to be isolated; rather, other materials were discovered in Wallace's house—in addition to over $42,000—that were likewise stolen from the mail. (Id. at 31:25-32:4.) I also concluded that general deterrence was particularly important here because other postal employees could be tempted to engage in similar misconduct. (Id. at 32:15-24.) Although I departed from the 37 to 46-month Guidelines range, "principally in recognition of the hardship to the defendant's children," (Sent. Tr. 33:1-4), I remain convinced that Wallace's 30-month sentence was "sufficient, but not greater than necessary, to comply with the purposes of [sentencing]," 18 U.S.C. § 3553(a).

9

## CONCLUSION

For these reasons, Wallace's motion pursuant to § 3582(c)(1)(A) is DENIED.

SO ORDERED.

Dated: March 15, 2023
Brooklyn, New York

                                              s/Carol Bagley Amon
                                       Carol Bagley Amon
                                       United States District Judge